JJD:IC

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

ADAM SHARKEY,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

**AFFIDAVIT IN SUPPORT OF REMOVAL TO THE NORTHERN DISTRICT OF OKLAHOMA**

(Fed. R. Crim. P. 5)

Case No. 22-MJ-1185

EASTERN DISTRICT OF NEW YORK, SS:

        James Tobin, being duly sworn, deposes and states that he is a Task Force Officer with the Homeland Security Investigations, duly appointed according to law and acting as such.

        On or about October 5, 2022, the United States District Court for the Northern District of Oklahoma issued an arrest warrant commanding the arrest of the defendant ADAM SHARKEY in connection with a criminal indictment under 22-CR-348 (GKF).

        The source of your deponent's information and the grounds for his belief are as follows:[1]

        1.      On or about October 5, 2022, the United States District Court for the Northern District of Oklahoma issued an arrest warrant commanding the arrest of the defendant ADAM SHARKEY in connection with a criminal indictment under 22-CR-348 (GKF). A true and correct copy of the arrest warrant is attached hereto as Exhibit A.

---

[1] Because the purpose of this Affidavit is to set forth only those facts necessary to establish probable cause to arrest and remove the defendant to the Northern District of Oklahoma, I have not described all the relevant facts and circumstances of which I am aware.

2.     The arrest warrant was issued in connection with a criminal indictment,

dated October 4, 2022, charging the defendant ADAM SHARKEY with conspiracy to sell and

receive stolen goods and the sale and receipt of stolen goods, in violation of 18 U.S.C. §§ 2315,

371, and 2, and conspiracy to commit money laundering and engaging in monetary transactions

in property derived from specific unlawful activity, in violation of 18 U.S.C. §§ 1956(h) and

1957(a). A true and correct copy of the criminal indictment is attached hereto as Exhibit B.

3.     On the morning of November 2, 2022, members of Homeland Security

Investigations ("HSI"), including your affiant, conducted a traffic stop of a white 2021 Tesla that

the defendant ADAM SHARKEY had previously been observed driving in front of 75 Sunrise

Parkway, North Service Road in West Islip, New York to execute the above-referenced arrest

warrant. When members of HSI encountered SHARKEY, he was asked to verify his name.

SHARKEY identified himself as "Adam Sharkey." The driver's appearance also matched the

appearance of ADAM SHARKEY in a photograph obtained from a law enforcement database.

SHARKEY was also asked to provide a form of identification. SHARKEY provided members

of HSI with a New York State Driver's License, which listed the name "Adam Sharkey" and

matched the date of birth of the ADAM SHARKEY wanted in the Northern District of

Oklahoma.

4.     After confirming his identity, HSI members arrested SHARKEY on the

arrest warrant.

5.     Based on the foregoing, I submit that there is probable cause to believe

that the defendant is the ADAM SHARKEY wanted in the Northern District of Oklahoma.

WHEREFORE, your deponent respectfully requests that the defendant ADAM

SHARKEY be removed to the Northern District of Oklahoma so that he may be dealt with

according to law.

James Tobin
Task Force Officer
Homeland Security Investigations

Sworn to me by telephone this
**2** day of November, 2022

s/ Lee G. Dunst

HONORABLE LEE G. DUNST
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

# EXHIBIT A

AO 442 (Rev. 10/13) Arrest Warrant



# UNITED STATES DISTRICT COURT
### for the
### Northern District of Oklahoma

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. 22 CR 348 GKF |
| ADAM SHARKEY | ) | |
| *Defendant* | ) | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay *(name of person to be arrested)* ADAM SHARKEY, who is accused of an offense or violation based on the following document filed with the court:

☒ Indictment    ☐ Superseding Indictment    ☐ Information    ☐ Superseding Information    ☐ Complaint
☐ Probation Violation Petition    ☐ Supervised Release Violation Petition    ☐ Violation Notice    ☐ Order of the Court

This offense is briefly described as follows:

18 U.S.C. §§ 371 and 2 – Conspiracy
18 U.S.C. §§ 2315 and 2 – Sale and Receipt of Stolen Goods
18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering
18 U.S.C. § 1957(a) – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity
Forfeiture Allegation: 18 U.S.C. §§ 981(a)(1)(c) and 982(a)(1) and 28 U.S.C. § 2461 – Conspiracy and Racketeering Forfeiture

Date:  OCT 0 5 2022

_____
*Issuing officer's signature*

City and state:  Tulsa, Oklahoma

Mark McCartt, Court Clerk
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ |
| At *(city and state)* _____ |
| Date: _____ |
| |
| _____ |
| *Arresting officer's signature* |
| _____ |
| *Printed name and title* |

# EXHIBIT B

SEALED

FILED
OCT 4 2022
Mark C. McCartt, Clerk
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. |
| **Plaintiff,** | ~~22 CR 348 GKF~~ |
| | FILED UNDER SEAL |
| **v.** | |
| | INDICTMENT |
| NAVIN KHANNA, a/k/a "Lovin," | [COUNT ONE: |
| a/k/a "Logan," | 18 U.S.C. §§ 371 and 2 - |
| ADAM G. SHARKEY, | Conspiracy; |
| ROBERT GARY SHARKEY, | COUNTS TWO through |
| BENJAMIN ROBERT MANSOUR, | NINETEEN: 18 U.S.C. §§ 2315 |
| TYLER JAMES CURTIS, a/k/a "Ty," | and 2 – Sale and Receipt of |
| REISS NICOLE BIBY, | Stolen Goods; |
| MARTYNAS MACERAUSKAS, a/k/a | COUNTS TWENTY through |
| "Marty," | TWENTY-THREE: |
| KRISTINA McKAY MACERAUSKAS, | 18 U.S.C. § 1956(h) – |
| PARKER STAR WEAVEL, | Conspiracy to Commit Money |
| SHANE ALLEN MINNICK, | Laundering; |
| RYAN DAVID LARUE, | COUNTS TWENTY-FOUR |
| BRIAN PATE THOMAS, | through FORTY: |
| MICHAEL ANTHONY RHODEN, | 18 U.S.C. § 1957(a) – Engaging |
| a/k/a "Big Mike," | in Monetary Transactions in |
| | Property Derived from Specified |
| **Defendants.** | Unlawful Activity; |
| | Forfeiture Allegation: 18 U.S.C. |
| | §§ 981(a)(1)(c) and 982(a)(1) and |
| | 28 U.S.C. § 2461 – Conspiracy |
| | and Racketeering Forfeiture] |

**THE GRAND JURY CHARGES:**

## COUNT ONE
### [18 U.S.C. §§ 371 and 2]

### INTRODUCTION

1.     As used in the Indictment, the following terms have the following meanings:

2.     "Catalytic converter" is a component of an automotive vehicle's exhaust device that reduces the toxic gas and pollutants from a vehicle's internal combustion engine into safe emissions by catalyzing a redox reaction process. Catalytic converters contain precious metals, including platinum, rhodium, and palladium.  A worldwide supply shortage has brought about an increase in the precious metals demand and value.

3.     A "cutter" is a person who steals catalytic converters from privately owned vehicles.

4.     An "intermediate buyer" is a person, organization, or entity that purchases or receives stolen catalytic converters from cutters.  The intermediate buyer then re-sells the catalytic converter to third parties.

5.     A "core buyer" is a person, organization, or entity that purchases or receives stolen catalytic converters from intermediate buyers.  Large-scale core buyers purchase the stolen catalytic converters to repackage and transport shipments to third parties, including foreign refineries.

6. "Recyclers" or "refineries" are industrial recycling plants that purchase or receive stolen catalytic converters from core buyers. Recyclers extract the precious metals and pay core buyers once the quantity of precious metals is determined.

## THE CONSPIRACY AND ITS OBJECTS

7. From in or about May 2020 to the date of this Indictment, in the Northern District of Oklahoma and elsewhere, the defendants, **NAVIN KHANNA, a/k/a "Lovin," a/k/a "Logan" ("KHANNA"), ADAM G. SHARKEY ("A. SHARKEY"), ROBERT GARY SHARKEY ("R. SHARKEY"), BENJAMIN ROBERT MANSOUR ("MANSOUR"), TYLER JAMES CURTIS, a/k/a "Ty" ("T. CURTIS"), REISS NICOLE BIBY ("R. BIBY"), MARTYNAS MACERAUSKAS, a/k/a "Marty" ("M. MACERAUSKAS"), KRISTINA McKAY MACERAUSKAS ("K. MACERAUSKAS"), PARKER STAR WEAVEL ("WEAVEL"), SHANE ALLEN MINNICK ("MINNICK"), RYAN DAVID LARUE ("LARUE"), BRIAN PATE THOMAS ("THOMAS"), MICHAEL ANTHONY RHODEN, a/k/a "Big Mike" ("RHODEN"),** knowingly and willfully conspired, confederated, and agreed, with each other and others, known and unknown to the Grand Jury (collectively, the "Conspirators"), to commit certain offenses against the United States, that is, to violate Title 18, United States Code, Section 2315, by receiving, possessing, concealing, storing, bartering, selling, and disposing of any goods, wares, and merchandise of the value of $5,000 or more, which have crossed a State boundary after being stolen, unlawfully converted, and

3

taken, knowing the same to have been stolen, unlawfully converted, and taken, as described below.

## THE PURPOSE OF THE CONSPIRACY

8.     The purpose of the Conspiracy was for the Conspirators to unlawfully enrich themselves by stealing catalytic converters from private vehicles within the Northern District of Oklahoma and elsewhere, then selling the catalytic converters to intermediate buyers and core buyers outside the state of Oklahoma.

## MANNER AND MEANS OF THE CONSPIRACY

### T. CURTIS' Origins with Catalytic Converters

9.     It was part of the Conspiracy that the Conspirators used the following manner and means to accomplish the Conspiracy:

10.     **T. CURTIS** began working for Unindicted Co-Conspirator No. 1, a person known to the Grand Jury, as a buyer of catalytic converters.  This required **T. CURTIS** to travel outside of Oklahoma to purchase catalytic converters.

11.     Through his employment with Unindicted Co-Conspirator No. 1, **T. CURTIS** became acquainted with various core buyers located throughout the United States who were interested in purchasing catalytic converters in bulk quantities.

12.     On or about January 2021, **T. CURTIS** opened Curtis Cores, LLC, located at 24890 East Highway 51 in Broken Arrow, Oklahoma.

13.     Using Curtis Cores, LLC, **T. CURTIS** purchased bulk quantities of stolen catalytic converters from cutters and various intermediate buyers throughout

4

the United States and resold the stolen catalytic converters to other intermediate buyers and various core buyers located throughout the United States, including DG Auto and Capital Cores Corp.

14.    DG Auto is a core buying business in Freehold, New Jersey, owned and operated by **KHANNA**, that purchases bulk quantities of catalytic converters.

15.    Capital Cores Corp is a core-buying business in West Islip, New York, owned and operated by **A. SHARKEY** that purchases bulk quantities of catalytic converters for resale to nationwide core buyers.

### The Conspirators' Reliance on DG Auto

16.    DG Auto is affiliated with multiple nationwide intermediate buyers of catalytic converters, organized by geographic region.  The intermediate buyers are privately owned businesses identified as DG Auto affiliated locations within their geographic region.

17.    The DG Auto affiliated intermediate buyers are further organized in tiers.  Low-tiered intermediate buyers sell catalytic converters to high-tiered intermediate buyers.

18.    DG Auto receives catalytic converters exclusively from the high-tiered DG Auto affiliated intermediate buyers.

19.    Curtis Cores LLC, Capital Cores Corp. and M & M Core Buying are high-tiered DG Auto affiliated buyers.

20.    DG Auto provides intermediate buyers and core buyers across the country with a website and web-based application that allow cutters, intermediate

5

buyers, and core buyers to purchase annual or monthly access to the DG Auto database, providing members detailed catalytic converter information and real time commodity market pricing.

21. The DG Auto website and web-based application also allows intermediate buyers to hedge product prices, meaning intermediate buyers are able to lock in current commodity prices before delivering to DG Auto affiliates, preventing profit loss from a fluctuating commodities market.

22. The DG Auto web-based services provide current prices of catalytic converters based on the make and model of a particular vehicle, assisting cutters in identifying the make and model of vehicles to target.

23. Additionally, DG Auto provides financial assistance to its higher-tiered intermediate buyers by supplying them with currency to purchase bulk quantities of catalytic converters.

24. DG Auto electronically transfers funds and transports concealed bulk currency to its higher-tiered intermediate buyers across the country in advance of sales to aid intermediate buyers in the purchasing of stolen catalytic converters.

25. DG Auto affiliated buyers pay cutters the published price on the DG Auto application for any catalytic converters provided.

26. The DG Auto affiliated buyers transport the purchased catalytic converters to DG Auto or other DG Auto affiliated intermediate buyers.

## The Conspirators' Acquisition of Stolen Property

27. Based on the precious metals market and the prices DG Auto agreed to pay, cutters targeted certain vehicles, including, among others, Toyota Prius, Toyota Tundra, Honda Element, and Ford F-250 and larger commercial trucks.

28. Cutters target residential neighborhoods and closed commercial locations, including automotive dealerships and rental vehicle locations.

29. Cutters use reciprocating saws and handheld pipe cutting tools to cut catalytic converters from private vehicles, resulting in rough, jagged edges on exhaust piping, frequently leaving the $O^2$ (oxygen) sensors with the catalytic converters.

30. After stealing catalytic converters, cutters deliver the stolen catalytic converters to lower-tiered intermediate buyers, including **MANSOUR**.

31. The lower-tiered intermediate buyers pay cutters with cash or drugs for the stolen catalytic converters.

32. The lower-tiered intermediate buyers, including **MANSOUR**, deliver bulk quantities of stolen catalytic converters to higher-tiered intermediate buyers, including **T. CURTIS**, **M. MACERAUSKAS**, and **A. SHARKEY**.

33. The higher-tiered intermediate buyers encourage the lower-tiered intermediate buyers to conceal the stolen catalytic converters prior to delivery, including transporting the catalytic converters inside storage containers and trucks and covering the catalytic converters in truck beds and trailers.

34. The higher-tiered intermediate buyers use cash and wire funds to pay lower-tiered intermediate buyers for the bulk stolen catalytic converters.

35. The higher-tiered intermediate buyers package and deliver the stolen catalytic converters to core buyers, including **KHANNA**.

36. The higher-tiered intermediate buyers conceal the shipments of stolen catalytic converters to core buyers by wrapping the shipments of catalytic converters to include tamper seals and false shipping documentation.

37. The core buyers, including **KHANNA**, use bulk cash and wire funds to pay intermediate buyers for the stolen catalytic converters.

### The Conspirators' Interstate Sale and Receipt of Stolen Property

38. After receiving stolen catalytic converters from cutters or lower intermediate buyers, **T. CURTIS, A. SHARKEY, M. MASERAUSKAS, WEAVEL, MINNICK, LARUE, THOMAS, RHODEN,** and **R. SHARKEY,** along with other co-conspirators, conceal and store the inventory in preparation for shipment to core buyers.

39. The Conspirators organized stolen catalytic converters in preparation for interstate shipment at storage locations, including Curtis Cores LLC, located at 24890 East Highway 51, Broken Arrow, Oklahoma ("the Curtis Cores location"), Capital Cores Corp, located at 320 Monroe Avenue, West Islip, New York; and M & M Core Buying, located at 317 South Collinson Street, Clarendon, Texas.

40.   **T. CURTIS** coordinated shipment of the stolen catalytic converters to core buyers located outside the state of Oklahoma, as follows:

> a.   **T. CURTIS** received stolen catalytic converters from low-level intermediate buyers in Texas, Kansas, New York, Arkansas, Minnesota, New Mexico, Louisiana, Missouri, and other states.
>
> b.   **T. CURTIS** delivered stolen catalytic converters to other high-level intermediate buyers, such as **A. SHARKEY** and core buyers, including **KHANNA**.
>
> c.   **T. CURTIS** and other Curtis Cores LLC employees drove stolen catalytic converters to DG Auto in Freehold, New Jersey, using private and rented vehicles.
>
> d.   Conspirators packaged and shipped stolen catalytic converters through commercial common freight companies.

41.   Over the course of the Conspiracy, **T. CURTIS** received approximately $13,144,093.00 in wired funds from DG Auto for the shipment of catalytic converters, most of which were stolen.

42.   Over the course of the Conspiracy, **T. CURTIS** received approximately $513,533.39 in wired funds from Capital Cores for the shipment of catalytic converters, most of which were stolen.

43.   **A. SHARKEY** coordinated shipment of the stolen catalytic converters to core buyers located outside the state of New York, as follows:

a. **A. SHARKEY** delivered stolen catalytic converters to other intermediate buyers, such as **T. CURTIS** and core buyers, including **KHANNA**.

b. **A. SHARKEY** received stolen catalytic converters from lower-level intermediate buyers, including **MANSOUR**, through private delivery and commercial freight shipments.

c. **R. SHARKEY** drove stolen catalytic converters to Curtis Cores LLC in Broken Arrow, Oklahoma, using rented vehicles.

d. Lower-level intermediate buyers packaged and shipped stolen catalytic converters to Capital Cores Corp using private delivery, commercial shipping, and commercial freight and common carrier companies.

44. Over the course of the Conspiracy, **A. SHARKEY** received approximately $45,470,447.11 in wired funds from DG Auto for the shipment of catalytic converters, including many which were stolen.

45. **A. SHARKEY** received approximately $292,440.00 in wired funds from Curtis Cores LLC for shipment of catalytic converters, including many which were stolen.

46. **M. MACERAUSKAS** coordinated shipment of the stolen catalytic converters to core buyers located outside the state of Texas, as follows:

a. **M. MACERAUSKAS** delivered stolen catalytic converters to core buyers, including **KHANNA**.

b. **M. MACERAUSKAS** and **K. MACERAUSKAS** drove stolen catalytic converters to DG Auto in Freehold, New Jersey, using private and rented vehicles.

c. **KHANNA** paid Conspirators to package and ship stolen catalytic converters using commercial freight companies.

47. **M. MACERAUSKAS** received approximately $6,108,448.00 in payments from DG Auto for shipment of catalytic converters, including many which were stolen.

## OVERT ACTS

48. In furtherance of the Conspiracy, the Conspirators committed, in the Northern District of Oklahoma and elsewhere, one or more of the following acts:

49. On or about December 12, 2020, **MANSOUR** caused approximately $1,575 to be transferred through CashApp to Unindicted Co-conspirator No. 2, an intermediate buyer known to the Grand Jury, for the payment of stolen catalytic converters.

50. On or about December 15, 2020, Unindicted Co-Conspirator No. 2 delivered bulk stolen catalytic converters to **MANSOUR**.

51. On or about January 3, 2021, **MANSOUR** delivered stolen catalytic converters to **T. CURTIS**.

52.     On or about April 24, 2021, **T. CURTIS** received bulk quantities of stolen catalytic converters from Unindicted Co-Conspirator No. 3, a person known to the Grand Jury.

53.     On or about April 28, 2021, **T. CURTIS** received bulk quantities of stolen catalytic converters from Unindicted Co-Conspirator No. 3.

54.     On or about May 2, 2021, **T.CURTIS** possessed $9,922 in U.S. currency, heroin, cocaine, prescription narcotics, a loaded firearm and 128 stolen catalytic converters with uneven, jagged edges.

55.     On or about May 2, 2021, Unindicted Co-Conspirator No. 4, a person known to the Grand Jury, disposed of the contents of **T. CURTIS'** safe located at the Curtis Cores LLC location.

56.     On or about May 15, 2021, **M. MACERAUSKAS** communicated over Facebook Messenger with **KHANNA** about concealing stolen catalytic converters.

57.     On or about December 2, 2021, Unindicted Co-Conspirator No. 5, a person known to the Grand Jury, stole a catalytic converter from a 2001 Ford Excursion in Rogers County, Oklahoma.

58.     On or about December 2, 2021, **MANSOUR** purchased a stolen catalytic converter from Unindicted Co-Conspirator No. 5.

59.     On or about January 13, 2022, **MANSOUR** shipped stolen catalytic converters from Bixby, Oklahoma, to **A. SHARKEY** through a common commercial freight carrier.

60.     On or about March 18, 2022, **MANSOUR** caused Unindicted Co-Conspirator No. 6, a person known to the Grand Jury, to deliver stolen catalytic converters to **T. CURTIS** at the Curtis Cores LLC location.

61.     On or about March 21, 2022, **MANSOUR** caused Unindicted Co-Conspirator No. 6 to deliver stolen catalytic converters to **T. CURTIS** at the Curtis Cores LLC location.

62.     On or about March 28, 2022, **MANSOUR** caused Unindicted Co-Conspirator No. 6 to deliver stolen catalytic converters to **T. CURTIS** at the Curtis Cores LLC location.

63.     On or about April 1, 2022, **MANSOUR** caused Unindicted Co-Conspirator No. 6 to deliver stolen catalytic converters to **T. CURTIS** at the Curtis Cores LLC location.

64.     On or about April 5, 2022, **MANSOUR** caused Unindicted Co-Conspirator No. 6 to deliver stolen catalytic converters to **T. CURTIS** at the Curtis Cores LLC location.

65.     On or about April 16, 2022, **K. MACERAUSKAS** received bulk U.S. currency from **KHANNA** at the Curtis Cores LLC location.

66.     On or about April 20, 2022, **KHANNA** caused $500,000.00 to be transmitted through wire communication to Unindicted Co-Conspirator No. 7, a Virginia-based person known to the Grand Jury.

67.     On or about April 22, 2022, **M. MACERAUSKAS** transferred $100,000.00 in U.S. currency to Unindicted Co-Conspirator No. 8, a person known to the Grand Jury, as payment for stolen catalytic converters.

68.     On or about April 24, 2022, Unindicted Co-Conspirator No. 4 received $500,000 in U.S. currency from Unindicted Co-Conspirator No. 7, for transport to **T. CURTIS** in Broken Arrow, Oklahoma.

69.     On or about April 27, 2022, **K. MACERAUSKAS** received bulk U.S. currency from **KHANNA** at the Curtis Cores LLC location as payment for stolen catalytic converters.

70.     On or about April 28, 2022, **WEAVEL, THOMAS** and **T. CURTIS** received stolen catalytic converters in Tulsa, Oklahoma, from Unindicted Co-Conspirator No. 9, a person known to the Grand Jury.

71.     On or about April 29, 2022, **T. CURTIS** caused $15,000.00 to be transmitted through wire payment to LPZ Recycling in Oklahoma City, Oklahoma, for the purchase of stolen catalytic converters.

72.     On or about April 29, 2022, **T. CURTIS** caused $31,800.00 to be transmitted through wire payment to PNR Junk Cars in Houston, Texas, for the purchase of stolen catalytic converters.

73.     On or about May 1, 2022, **R. SHARKEY** delivered stolen catalytic converters from Texas to **T. CURTIS** at the Curtis Cores LLC location.

74. On or about May 1, 2022, **RHODEN** inventoried and stored stolen catalytic converters received at the Curtis Cores LLC location from Unindicted Co-Conspirator No. 10, an intermediate buyer of stolen catalytic converters, known to the Grand Jury.

75. On or about May 1, 2022, **R. BIBY** withdrew $30,000.00 in U.S. currency from Curtis Cores LLC's Arvest Bank account xxxx7264 to pay for stolen catalytic converters.

76. On or about May 2, 2022, **MINNICK**, an employee of Curtis Cores LLC, transported stolen catalytic converters from Oklahoma to Colorado for delivery to Unindicted Co-Conspirator No. 11, a Colorado-based intermediate buyer known to the Grand Jury.

77. On or about May 3, 2022, **THOMAS**, an associate of Curtis Cores LLC, delivered $150,000.00 in U.S. currency to Unindicted Co-Conspirator No. 12, a person in Houston, Texas, known to the Grand Jury, for the purchase of stolen catalytic converters.

78. On or about May 4, 2022, Unindicted Co-Conspirator No. 13, a person known to the Grand Jury, issued a $5,610.00 check from Curtis Cores LLC's Arvest Bank account xxxx7264 to Unindicted Co-Conspirator No. 12, for the payment of stolen catalytic converters transported from Houston, Texas, to the Curtis Cores LLC location.

79. On or about May 5, 2022, **THOMAS** paid Unindicted Co-Conspirator No. 12 $100,000.00 in U.S. currency for the delivery of stolen catalytic converters from Houston, Texas.

80. On or about May 5, 2022, **THOMAS** gathered and prepared 40 stolen Honda Element catalytic converters from the Curtis Cores LLC location for shipment to an intermediate buyer in Kansas.

81. On or about May 6, 2022, **MANSOUR** delivered stolen catalytic converters to **LARUE** at the Curtis Cores LLC location.

82. On or about May 6, 2022, **LARUE** issued a $2,450.00 check from Curtis Cores LLC's Arvest Bank account xxxx7264 to **MANSOUR** for the payment of stolen catalytic converters.

83. On or about May 7, 2022, **WEAVEL** received a delivery of stolen catalytic converters transported by commercial common carrier in Tulsa, Oklahoma.

84. On or about May 7, 2022, **KHANNA** received stolen catalytic converters from **T. CURTIS** at DG Auto in Freehold, New Jersey.

85. On or about May 7, 2022, Unindicted Co-Conspirator No. 14, an Arkansas-based intermediate buyer known to the Grand Jury, delivered stolen catalytic converters to **LARUE, MINNICK, RHODEN**, and **THOMAS** at the Curtis Cores LLC location.

86.     On or about May 7, 2022, **MINNICK** issued a $7,833.00 check from Curtis Cores LLC's Arvest Bank account xxxx7264 to Unindicted Co-Conspirator No. 14 for the delivery of stolen catalytic converters.

87.     On or about May 7, 2022, **A. SHARKEY** provided **R. SHARKEY** with stolen catalytic converters and approximately $280,000.00 in U.S. currency to transport in a rented vehicle from New York to **T. CURTIS** in Oklahoma.

88.     On or about May 7, 2022, **KHANNA** provided **R. SHARKEY** with approximately $849,000.00 in U.S. currency to transport in a rented vehicle from DG Auto in New Jersey to **T. CURTIS** in Oklahoma.

89.     On or about May 8, 2022, Unindicted Co-Conspirator No. 12 concealed and shipped stolen catalytic converters from Houston, Texas, to **T. CURTIS** in Oklahoma through commercial common carrier.

90.     On or about May 10, 2022, **K. MACERAUSKAS** received approximately $1,075,000.00 in U.S. currency concealed in a trash bag from **KHANNA's** parents at **KHANNA's** residence in Holmdel, New Jersey, to be transported to **M. MACERAUSKAS** in Clarendon, Texas.

91.     On or about May 11, 2022, **WEAVEL** received $200,000.00 in U.S. currency from Unindicted Co-Conspirator No. 13 at **T. CURTIS'** residence for the payment of stolen catalytic converters to be delivered from Houston, Texas.

92.     On or about May 12, 2022, **R. BIBY** concealed U.S. currency at **T. CURTIS'** residential property in Oklahoma.

93. On or about May 27, 2022, **T. CURTIS** received and concealed stolen catalytic converters from Unindicted Co-Conspirator No. 14 at the Curtis Cores LLC location.

94. On or about May 31, 2022, **T. CURTIS** received and concealed stolen catalytic converters from Unindicted Co-Conspirator No. 12.

95. On or about June 25, 2022, **T. CURTIS** shipped stolen catalytic converters through a commercial common carrier from Tulsa, Oklahoma, to **A. SHARKEY** at the Capital Cores Corp.'s West Islip, New York, location.

96. On or about June 25, 2022, **MINNICK** and **RHODEN** concealed and transported stolen catalytic converters from the Curtis Cores LLC location to Unindicted Co-Conspirator No. 15, an intermediate buyer in Phoenix, Arizona, known to the Grand Jury.

97. On or about June 7, 2022, Unindicted Co-Conspirator No. 16, an intermediate buyer in Houston, Texas, known to the Grand Jury, delivered stolen catalytic converters to the Curtis Cores LLC location.

98. On or about June 14, 2022, **T. CURTIS** received stolen catalytic converters from Unindicted Co-Conspirator No. 2.

99. On or about June 16, 2022, Unindicted Co-Conspirator No. 11 received stolen catalytic converters from **THOMAS** and **RHODEN** on behalf of Curtis Cores LLC.

100. On or about June 16, 2022, **T. CURTIS** concealed and shipped approximately 2,820 stolen catalytic converters to Unindicted Co-Conspirator No. 17, a Burlington, New Jersey refinery, known to the Grand Jury.

101. On or about July 7, 2022, **MANSOUR** delivered stolen catalytic converters to **T. CURTIS** at the Curtis Cores LLC location.

102. On or about August 1, 2022, **T. CURTIS** caused approximately $9,995.00 to be transferred to the father of Unindicted Co-Conspirator No. 18, an intermediate buyer of stolen catalytic converters in Houston, Texas, known to the Grand Jury, for his bond payment.

103. On or about August 3, 2022, **T. CURTIS** and **A. SHARKEY** communicated over telephone to discuss the IRS reporting requirements relating to wiring funds over $10,000.00.

104. On or about September 7, 2022, **T. CURTIS** received and concealed stolen catalytic converters from **MANSOUR** at the Curtis Cores LLC location.

All in violation of Title 18, United States Code, Sections 371 and 2.

## COUNTS TWO THROUGH NINETEEN
## [18 U.S.C. §§ 2315 and 2]

105.    The Grand Jury hereby incorporates and realleges paragraphs 1 through 104 of this Indictment.

106.    On or about the dates stated below, in the Northern District of Oklahoma and elsewhere, aided and abetted by each other and others known and unknown to the Grand Jury, the defendants, **NAVIN KHANNA**, a/k/a "Lovin," a/k/a "Logan," **ADAM G. SHARKEY**, **TYLER JAMES CURTIS**, a/k/a "Ty," **SHANE ALLEN MINNICK**, and **BRIAN PATE THOMAS**, as specified in the table below, received, possessed, concealed, stored, bartered, sold, and disposed of goods, wares and merchandise of a value in excess of $5,000, which had crossed a State boundary after having been stolen, unlawfully converted, and taken, knowing that the goods, wares, and merchandise had been stolen, unlawfully converted and taken:

| Count | Date | Originating State | Delivered To State | Receiver |
|-------|------|-------------------|---------------------|----------|
| 2 | 04/24/2021 | Texas | Oklahoma | **T. CURTIS** |
| 3 | 04/28/2021 | Texas | Oklahoma | **T. CURTIS** |
| 4 | 01/13/2022 | Oklahoma | New York | **A.SHARKEY** |
| 5 | 04/01/2022 | Texas | Oklahoma | **T. CURTIS** |
| 6 | 04/21/2022 | Texas | Oklahoma | **T. CURTIS** |
| 7 | 04/23/2022 | Texas | Oklahoma | **T. CURTIS** |
| 8 | 05/01/2022 | Texas | Oklahoma | **T. CURTIS** |
| 9 | 05/01/2022 | Minnesota | Oklahoma | **T. CURTIS** |
| 10 | 05/02/2022 | Oklahoma | Colorado | **MINNICK** |
| 11 | 05/05/2022 | California | Oklahoma | **THOMAS** |
| 12 | 05/06/2022 | Minnesota | Oklahoma | **THOMAS** |
| 13 | 05/07/2022 | Oklahoma | New Jersey | **KHANNA** |
| 14 | 05/07/2022 | Arkansas | Oklahoma | **T. CURTIS** |

| Count | Date | Originating State | Delivered To State | Receiver |
|-------|------|-------------------|--------------------|----------|
| 15 | 05/08/2022 | Texas | Oklahoma | **T. CURTIS** |
| 16 | 05/08/2022 | Oklahoma | Kansas | **THOMAS** |
| 17 | 05/27/2022 | Arkansas | Oklahoma | **T. CURTIS** |
| 18 | 05/31/2022 | Texas | Oklahoma | **T. CURTIS** |
| 19 | 06/07/2022 | Texas | Oklahoma | **T. CURTIS** |

All in violation of Title 18, United States Code, Sections 2315 and 2.

## COUNT TWENTY
### [18 U.S.C. § 1956(h)]

107. The Grand Jury hereby incorporates and realleges paragraphs 1 through 106 of this Indictment.

### THE CONSPIRACY AND ITS OBJECT

108. Beginning at least as early as in or about March 2021 and continuing through the date of this Indictment, the exact dates being unknown to the Grand Jury, in the Northern District of Oklahoma and elsewhere, the defendants, **TYLER JAMES CURTIS** a/k/a "Ty" and **REISS NICOLE BIBY** (the "Co-Conspirators"), and others known and unknown to the Grand Jury, knowingly and willfully conspired to commit the following offenses against the United States: to knowingly engage and attempt to engage in monetary transactions, as described below, in criminally derived property of a value greater than $10,000 and derived from specified unlawful activities (Interstate Transportation of Stolen Property and Sale or Receipt of Stolen Goods) in violation of Title 18, United States Code, Section 1957.

### MANNER AND MEANS OF THE CONSPIRACY

109. The Co-Conspirators used the following manner and means to achieve the objects of the conspiracy:

110. The allegations of paragraphs 9 through 47 are incorporated in this count by reference.

111. On or about the dates stated below, **T. CURTIS** and **R. BIBY** transferred and caused the transfer of proceeds derived from the commission of the

22

offenses of Interstate Transportation of Stolen Property and Sale and Receipt of

Stolen Goods by withdrawing proceeds from Arvest Bank account number

xxxx7264, in the following amounts set forth in the table below:

| Date | Subject | Amount |
|---|---|---|
| 03/24/2021 | T. CURTIS | $30,000.00 |
| 03/29/2021 | T. CURTIS | $50,000.00 |
| 03/29/2021 | T. CURTIS | $50,000.00 |
| 04/05/2021 | T. CURTIS | $250,000.00 |
| 04/12/2021 | T. CURTIS | $50,000.00 |
| 04/19/2021 | T. CURTIS | $50,000.00 |
| 04/26/2021 | T. CURTIS | $50,000.00 |
| 05/04/2021 | T. CURTIS | $100,000.00 |
| 07/26/2021 | T. CURTIS | $30,000.00 |
| 08/31/2021 | T. CURTIS | $20,000.00 |
| 09/01/2021 | T. CURTIS | $20,000.00 |
| 09/21/2021 | T. CURTIS | $40,000.00 |
| 09/24/2021 | R. BIBY, T. CURTIS | $20,000.00 |
| 09/27/2021 | T. CURTIS | $40,000.00 |
| 10/08/2021 | T. CURTIS | $40,000.00 |
| 10/11/2021 | T. CURTIS | $40,000.00 |
| 10/18/2021 | T. CURTIS | $40,000.00 |
| 10/28/2021 | T. CURTIS | $30,000.00 |
| 11/10/2021 | R. BIBY, T. CURTIS | $40,000.00 |
| 11/15/2021 | T. CURTIS | $40,000.00 |
| 12/02/2021 | T. CURTIS | $20,000.00 |
| 12/03/2021 | T. CURTIS | $40,000.00 |
| 12/09/21 | T. CURTIS | $50,000.00 |
| 12/16/21 | R. BIBY | $50,000.00 |
| 12/21/21 | T. CURTIS | $20,000.00 |
| 12/23/21 | T. CURTIS | $40,000.00 |

| Date | Subject | Amount |
|------|---------|--------|
| 01/18/22 | R. BIBY | $50,000.00 |
| 01/19/22 | T. CURTIS | $20,000.00 |
| 01/24/22 | T. CURTIS | $25,000.00 |
| 01/24/22 | R. BIBY | $20,000.00 |
| 02/02/22 | T. CURTIS | $50,000.00 |
| 02/03/22 | T. CURTIS | $20,000.00 |
| 02/09/22 | R. BIBY | $40,000.00 |
| 02/16/22 | T. CURTIS | $40,000.00 |
| 02/21/22 | T. CURTIS | $40,000.00 |
| 02/22/22 | R. BIBY | $40,000.00 |
| 02/22/22 | T. CURTIS | $20,000.00 |
| 02/23/22 | T. CURTIS | $40,000.00 |
| 03/01/22 | R. BIBY | $50,000.00 |
| 03/10/22 | T. CURTIS | $50,000.00 |
| 03/15/22 | T. CURTIS | $52,000.00 |
| 03/18/22 | T. CURTIS | $50,000.00 |
| 03/18/22 | T. CURTIS | $40,000.00 |
| 03/25/22 | R. BIBY | $50,000.00 |
| 04/06/22 | T. CURTIS | $50,000.00 |
| 04/29/22 | T. CURTIS | $60,000.00 |
| 05/02/22 | T. CURTIS | $40,000.00 |
| 05/17/22 | R. BIBY | $40,000.00 |
| 06/07/22 | T. CURTIS | $40,000.00 |
| 06/10/22 | T. CURTIS | $50,000.00 |
| 06/14/22 | T. CURTIS | $20,000.00 |
| 06/27/22 | R. BIBY, T. CURTIS | $17,000.00 |
| 06/29/22 | T. CURTIS | $50,000.00 |
| 07/15/22 | T. CURTIS | $40,000.00 |
| 07/21/22 | T. CURTIS | $60,000.00 |
| 07/29/22 | T. CURTIS | $50,000.00 |
| 08/11/22 | R. BIBY | $40,000.00 |

| Date | Subject | Amount |
|---|---|---|
| 08/15/22 | T. CURTIS | $40,000.00 |
| 08/29/22 | T. CURTIS | $40,000.00 |
| 09/01/22 | R. BIBY, T. CURTIS | $20,000.00 |
| 09/06/22 | T. CURTIS | $40,000.00 |
| 09/12/22 | T. CURTIS | $40,000.00 |

All in violation of Title 18, United States Code, Section 1956(h).

112. The Grand Jury hereby incorporates and realleges paragraphs 1 through 111 of this Indictment.

## THE CONSPIRACY AND ITS OBJECT

113. Beginning at least as early as in or about March 2021 and continuing through the date of this Indictment, the exact dates being unknown to the Grand Jury, in the Northern District of Oklahoma and elsewhere, the defendants, **NAVIN KHANNA**, a/k/a "Lovin," a/k/a "Logan," and **TYLER JAMES CURTIS**, a/k/a "Ty" (the "Co-Conspirators"), and others known and unknown to the Grand Jury, knowingly and willfully conspired to commit the following offenses against the United States: to knowingly engage and attempt to engage in monetary transactions, as described below, in criminally derived property of a value greater than $10,000 and derived from specified unlawful activities (Interstate Transportation of Stolen Property and Sale or Receipt of Stolen Goods) in violation of Title 18, United States Code, Section 1957.

## MANNER AND MEANS OF THE CONSPIRACY

114. The Co-Conspirators used the following manner and means to achieve the objects of the conspiracy:

115. The allegations of paragraphs 9 through 47 are incorporated in this count by reference.

116.    On or about the dates stated below, **KHANNA** and **T. CURTIS** transferred and caused the transfer of proceeds derived from the commission of the offenses of Interstate Transportation of Stolen Property and Sale and Receipt of Stolen Goods from various DG Auto financial accounts to the Curtis Cores LLC Arvest Bank Account xxxx7264, as set forth in the table below:

| Date | Originating Account | Beneficiary Account | Amount |
|---|---|---|---|
| 03/25/2021 | Wells Fargo xxxx1308 | Arvest xxxx7264 | $140,000.00 |
| 03/31/2021 | Wells Fargo xxxx1308 | Arvest xxxx7264 | $200,000.00 |
| 04/26/2021 | Valley National Bank xxxx5035 | Arvest xxxx7264 | $150,000.00 |
| 04/28/2021 | Valley National Bank xxxx5035 | Arvest xxxx7264 | $300,000.00 |
| 09/01/2021 | Valley National Bank xxxx5035 | Arvest xxxx7264 | $51,000.00 |
| 09/07/2021 | Valley National Bank xxxx5035 | Arvest xxxx7264 | $99,985.00 |
| 10/01/2021 | Valley National Bank xxxx5035 | Arvest xxxx7264 | $30,000.00 |
| 10/13/2021 | Valley National Bank xxxx5035 | Arvest xxxx7264 | $50,000.00 |
| 10/29/2021 | Valley National Bank xxxx5035 | Arvest xxxx7264 | $286,000.00 |
| 12/07/2021 | Valley National Bank xxxx5035 | Arvest xxxx7264 | $100,000.00 |
| 01/12/2022 | Valley National Bank xxxx5035 | Arvest xxxx7264 | $50,000.00 |
| 03/18/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $499,985.00 |
| 04/11/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $99,985.00 |
| 04/14/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $39,985.00 |
| 04/18/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $99,985.00 |
| 04/22/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $99,985.00 |
| 04/28/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $74,985.00 |
| 05/04/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $99,985.00 |
| 05/10/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $49,985.00 |
| 05/12/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $99,985.00 |
| 05/16/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $649,985.00 |

| Date | Originating Account | Beneficiary Account | Amount |
|---|---|---|---|
| 05/27/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $99,985.00 |
| 06/01/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $399,985.00 |
| 06/06/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $199,985.00 |
| 06/08/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $109,985.00 |
| 06/24/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $109,985.00 |
| 06/27/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $149,985.00 |
| 06/28/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $249,985.00 |
| 07/08/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $199,985.00 |
| 07/14/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $99,985.00 |
| 07/15/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $199,985.00 |
| 07/20/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $299,985.00 |
| 07/26/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $45,985.00 |
| 08/01/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $349,985.00 |
| 08/02/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $199,985.00 |
| 08/04/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $199,985.00 |
| 08/08/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $149,985.00 |
| 08/11/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $99,985.00 |
| 08/17/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $749,985.00 |
| 08/19/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $149,985.00 |
| 08/23/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $199,985.00 |
| 08/26/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $149,985.00 |
| 08/31/2022 | Investors Bank xxxx8534 | Arvest xxxx7264 | $200,000.00 |

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT TWENTY-TWO
## [18 U.S.C. § 1956(h)]

117.    The Grand Jury hereby incorporates and realleges paragraphs 1 through 116 of this Indictment.

### THE CONSPIRACY AND ITS OBJECT

118.    Beginning at least as early as in or about July 2021 and continuing through the date of this Indictment, the exact dates being unknown to the Grand Jury, in the Northern District of Oklahoma and elsewhere, the defendants, **ADAM G. SHARKEY** and **TYLER JAMES CURTIS**, a/k/a "Ty" (the "Co-Conspirators"), and others known and unknown to the Grand Jury, knowingly and willfully conspired to commit the following offenses against the United States: to knowingly engage and attempt to engage in monetary transactions, as described below, in criminally derived property of a value greater than $10,000 and derived from specified unlawful activities (Interstate Transportation of Stolen Property and Sale or Receipt of Stolen Goods) in violation of Title 18, United States Code, Section 1957.

### MANNER AND MEANS OF THE CONSPIRACY

119.    The Co-Conspirators used the following manner and means to achieve the objects of the conspiracy:

120.    The allegations of paragraphs 9 through 47 are incorporated in this count by reference.

29

121. On or about the dates stated below, **A. SHARKEY** and **T. CURTIS** transferred and caused the transfer of proceeds, transferred and caused the transfer of proceeds derived from the commission of the offenses of Interstate Transportation of Stolen Property and Sale and Receipt of Stolen Goods from Capital Cores Corp. financial accounts to Curtis Cores LLC, as set forth in the table below:

| Posted Date | Originating Account | Beneficiary Account | Amount |
|---|---|---|---|
| 07/13/2021 | TD Bank xxxxxx6307 | Arvest xxxx7264 | $50,000.00 |
| 08/02/2021 | TD Bank xxxxxx6307 | Arvest xxxx7264 | $30,000.00 |
| 11/29/2021 | TD Bank xxxxxx6307 | Arvest xxxx7264 | $15,000.00 |
| 12/09/2021 | TD Bank xxxxxx6307 | Arvest xxxx7264 | $30,000.00 |
| 12/21/2021 | TD Bank xxxxxx6307 | Arvest xxxx7264 | $40,000.00 |
| 12/22/2021 | TD Bank xxxxxx6307 | Arvest xxxx7264 | $100,000.00 |

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT TWENTY-THREE
## [18 U.S.C. § 1956(h)]

122.    The Grand Jury hereby incorporates and realleges paragraphs 1 through 121 of this Indictment.

## THE CONSPIRACY AND ITS OBJECT

123.    Beginning at least as early as in or about November 2020 and continuing through the date of this Indictment, the exact dates being unknown to the Grand Jury, in the Northern District of Oklahoma and elsewhere, the defendants, **ADAM G. SHARKEY** and **BENJAMIN ROBERT MANSOUR** (the "Co-Conspirators"), and others known and unknown to the Grand Jury, knowingly and willfully conspired to commit the following offenses against the United States: to knowingly engage and attempt to engage in monetary transactions, as described below, in criminally derived property of a value greater than $10,000 and derived from specified unlawful activities (Interstate Transportation of Stolen Property and Sale or Receipt of Stolen Goods) in violation of Title 18, United States Code, Section 1957.

## MANNER AND MEANS OF THE CONSPIRACY

124.    The Co-Conspirators used the following manner and means to achieve the objects of the conspiracy:

125.    The allegations of paragraphs 9 through 47 are incorporated in this count by reference.

126.   On or about the dates stated below, **A. SHARKEY** and **MANSOUR** transferred and caused the transfer of proceeds, transferred and caused the transfer of proceeds derived from the commission of the offenses of Interstate Transportation of Stolen Property and Sale and Receipt of Stolen Goods from Capital Cores Corp.'s TD Bank account xxxxxx6307 to the financial accounts owned and maintained by entities of **MANSOUR**, including GC Automotive and Parts LLC and Premier Hybrid and Battery LLC, as set forth in the table below:

| Date | Destination Account | Beneficiary | Amount |
|---|---|---|---|
| 11/02/2020 | BBVA Compass Bank Account xxxxx3815 | GC Automotive and Parts LLC | $11,285.00 |
| 12/09/2020 | BBVA Compass Bank Account xxxxx3815 | GC Automotive and Parts LLC | $11,479.00 |
| 12/28/2020 | BBVA Compass Bank Account xxxxx3815 | GC Automotive and Parts LLC | $18,273.00 |
| 01/08/2021 | BBVA Compass Bank Account xxxxx3815 | GC Automotive and Parts LLC | $12,450.00 |
| 01/20/2021 | BBVA Compass Bank Account xxxxx3815 | GC Automotive and Parts LLC | $13,447.00 |
| 02/04/2021 | The BANCORP Account xxxx6273 | GC Automotive and Parts LLC | $14,481.00 |
| 02/17/2021 | The BANCORP Account xxxx6273 | GC Automotive and Parts LLC | $21,279.00 |
| 03/22/2021 | The BANCORP Account xxxx6273 | GC Automotive and Parts LLC | $13,799.00 |
| 04/02/2021 | Bank of America Account xxxx8874 | GC Automotive and Parts LLC | $26,300.00 |
| 04/07/2021 | Bank of America Account xxxx8874 | GC Automotive and Parts LLC | $15,000.00 |
| 04/13/2021 | Bank of America Account xxxx8874 | GC Automotive and Parts LLC | $33,049.00 |
| 04/22/2021 | Bank of America Account xxxx8874 | GC Automotive and Parts LLC | $42,494.00 |
| 05/03/2021 | Bank of America Account xxxx8874 | GC Automotive and Parts LLC | $30,000.00 |

| Date | Destination Account | Beneficiary | Amount |
|---|---|---|---|
| 05/05/2021 | Bank of America Account xxxx8874 | GC Automotive and Parts LLC | $20,167.00 |
| 05/12/2021 | Bank of America Account xxxx8874 | GC Automotive and Parts LLC | $28,910.00 |
| 05/21/2021 | Bank of America Account xxxx8874 | GC Automotive and Parts LLC | $50,000.00 |
| 06/01/2021 | Bank of America Account xxxx8874 | GC Automotive and Parts LLC | $40,021.00 |
| 06/22/2021 | Bank of America Account xxxx8874 | GC Automotive and Parts LLC | $45,000.00 |
| 07/09/2021 | Bank of America Account xxxx8874 | GC Automotive and Parts LLC | $15,000.00 |
| 07/09/2021 | Bank of America Account xxxx8874 | GC Automotive and Parts LLC | $20,000.00 |
| 07/12/2021 | Bank of America Account xxxx8874 | GC Automotive and Parts LLC | $30,000.00 |
| 07/22/2021 | Bank of America Account xxxx8874 | GC Automotive and Parts LLC | $25,000.00 |
| 08/02/2021 | Bank of America Account xxxx8874 | GC Automotive and Parts LLC | $40,000.00 |
| 08/06/2021 | Bank of America Account xxxx8874 | GC Automotive and Parts LLC | $15,000.00 |
| 08/23/2021 | Bank of America Account xxxx8874 | GC Automotive and Parts LLC | $30,000.00 |
| 08/25/2021 | Bank of America Account xxxx8874 | GC Automotive and Parts LLC | $35,245.00 |
| 08/27/2021 | Bank of America Account xxxx8874 | GC Automotive and Parts LLC | $10,774.00 |
| 09/14/2021 | Bank of America Account xxxx8874 | GC Automotive and Parts LLC | $51,000.00 |
| 09/24/2021 | Bank of America Account xxxx8874 | GC Automotive and Parts LLC | $18,778.00 |
| 10/04/2021 | Bank of America Account xxxx8874 | GC Automotive and Parts LLC | $30,000.00 |
| 10/18/2021 | Bank of America Account xxxx8874 | GC Automotive and Parts LLC | $20,000.00 |
| 10/18/2021 | Radius Bank Account xxxxxx7373 | Premier Hybrid and Battery LLC | $15,358.00 |
| 10/28/2021 | Bank of America Account xxxx8874 | GC Automotive and Parts LLC | $15,799.00 |

| Date | Destination Account | Beneficiary | Amount |
|---|---|---|---|
| 10/28/2021 | Radius Bank Account xxxxxx7373 | Premier Hybrid and Battery LLC | $17,251.00 |
| 11/15/2021 | Bank of America Account xxxx8874 | GC Automotive and Parts LLC | $13,042.00 |
| 11/15/2021 | Radius Bank Account xxxxxx7373 | Premier Hybrid and Battery LLC | $26,266.00 |
| 12/09/2021 | Radius Bank Account xxxxxx7373 | Premier Hybrid and Battery LLC | $20,000.00 |
| 12/28/2021 | Radius Bank Account xxxxxx7373 | Premier Hybrid and Battery LLC | $15,000.00 |
| 01/06/2022 | Bank of America Account xxxx8874 | Premier Hybrid and Battery LLC | $20,000.00 |

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT TWENTY-FOUR through FORTY
### [18 U.S.C. § 1957(a)]

127.    The Grand Jury hereby incorporates and realleges paragraphs 1 through 126 of this Indictment.

128.    Beginning at least as early as in or about March 2021 and continuing through the date of this Indictment, and on or about the dates stated below, in the Northern District of Oklahoma and elsewhere, the defendants, **NAVIN KHANNA**, a/k/a "Lovin," a/k/a "Logan," **ADAM G. SHARKEY**, and **TYLER JAMES CURTIS** a/k/a "Ty," knowingly engaged and attempted to engage in monetary transactions, as described below, in criminally derived property of a value greater than $10,000 and derived from specified unlawful activities. The specified unlawful activities were Interstate Transportation of Stolen Property, in violation of Title 18, United States Code, Section 2314 and Sale or Receipt of Stolen Goods, in violation of Title 18, United States Code, Section 2315.

129.    The monetary transactions described below represent funds **KHANNA** transferred from DG Auto Investors Bank account xxx8534 to the Curtis Cores LLC Arvest Bank Account xxxx7264:

| Count | Date | Amount |
|-------|------|--------|
| 24 | 03/18/2022 | $499,985.00 |
| 25 | 05/16/2022 | $649,985.00 |
| 26 | 06/01/2022 | $399,985.00 |
| 27 | 08/01/2022 | $349,985.00 |
| 28 | 08/17/2022 | $749,985.00 |

130.   The monetary transactions described below represent funds **A.**

**SHARKEY** transferred from TD Bank account xxxxxx6307 to the Curtis Cores LLC

Arvest Bank Account xxxx7264:

| Count | Date | Amount |
|-------|------|--------|
| 29 | 07/13/2021 | $50,000.00 |
| 30 | 08/02/2021 | $30,000.00 |
| 31 | 11/29/2021 | $15,000.00 |
| 32 | 12/09/2021 | $30,000.00 |
| 33 | 12/21/2021 | $40,000.00 |
| 34 | 12/22/2021 | $100,000.00 |

131.   The monetary transactions described below represent funds **A.**

**SHARKEY** transferred from TD Bank account xxxxxx6307 to financial accounts

owned and maintained by entities of **MANSOUR**, including GC Automotive and

Parts LLC and Premier Hybrid and Battery LLC:

| Count | Date | Amount |
|-------|------|--------|
| 35 | 04/13/2021 | $33,049.00 |
| 36 | 04/22/2021 | $42,494.00 |
| 37 | 05/21/2021 | $50,000.00 |
| 38 | 06/01/2021 | $40,021.00 |
| 39 | 06/22/2021 | $45,000.00 |
| 40 | 08/02/2021 | $40,000.00 |

All in violation of Title 18, United States Code, Section 1957(a).

## FORFEITURE ALLEGATION
## [18 U.S.C. §§ 981(a)(1)(c) and 982(a)(1), and 28 U.S.C. § 2461]

The allegations contained in this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(c), Title 18, United States Code, Section 982(a), and Title 28, United States Code, Section 2461.

Upon conviction of the offenses alleged in this Indictment, as a part of their sentences, the defendants, **NAVIN KHANNA**, a/k/a "Lovin," a/k/a "Logan," **ADAM G. SHARKEY, ROBERT GARY SHARKEY, BENJAMIN ROBERT MANSOUR, TYLER JAMES CURTIS**, a/k/a ""Ty," **REISS NICOLE BIBY, MARTYNAS MACERAUSKAS**, a/k/a "Marty," **KRISTINA McKAY MACERAUSKAS, PARKER STAR WEAVEL, SHANE ALLEN MINNICK, RYAN DAVID LARUE, BRIAN PATE THOMAS**, and **MICHAEL ANTHONY RHODEN**, a/k/a "Big Mike," shall forfeit to the United States any property constituting, or derived from, or traceable to, the proceeds obtained, directly or indirectly, as a result of such violations, and any property, real or personal, that was used or intended to be used to commit or to facilitate the violation of federal law. The property to be forfeited includes, but is not limited to:

### CURRENCY

1. Approximately $500,000.00 in United States currency seized from **MINNICK** on or about May 2, 2022 at the Tulsa International Airport;

2. Approximately $1,129,000.00 in United States currency seized from **R. SHARKEY** on or about May 8, 2022 in Wyandotte, Oklahoma;

37

3. Approximately $1,075,000.00 in United States currency seized from **K. MACERAUSKAS** and **M. MACERAUSKAS** on or about May 11, 2022 in Texas;

## REAL PROPERTY

4. All that lot and parcel of land, together with all buildings, appurtenances, improvements, fixtures, attachments and easements thereon, and all rights appertaining thereto, located at 73144 South 250 Road, Wagoner, Oklahoma;

## PERSONAL PROPERTY

5. A 2017 Four Winns H180 boat, VIN PFWME077K617;

6. A 2017 Boat Trailer, VIN 566F8ZR13H2000070;

## FINANCIAL ACCOUNTS

7. All U.S. currency, funds, and other monetary instruments credited to or seized from account number xxxx7264 held in the name of Tyler Curtis d/b/a Curtis Cores LLC located at Arvest Bank;

8. All U.S. currency, funds, and other monetary instruments credited to or seized from account number xxxx1660 held in the name of Monica M. Curtis and Tyler J. Curtis located at Arvest Bank;

9. All U.S. currency, funds, and other monetary instruments credited to or seized from account number xxxx1741 held in the name of Tyler J. Curtis located at Arvest Bank;

10. All U.S. currency, funds, and other monetary instruments credited to or seized from account number xxxx1987 held in the name of Reiss N. Biby and Kimberly D. Biby located at Arvest Bank;

11. All U.S. currency, funds, and other monetary instruments credited to or seized from account number xxxx9507 held in the name of Tyler J. Curtis and Reiss N. Biby located at Arvest Bank;

## VEHICLES

12. A 2019 Volvo XC6, registered to Kimberly D. Biby and Reiss N. Biby;

13. A 2019 Chevrolet Silverado, registered to Tyler Curtis and Reiss Biby; and

14. A 2012 Chevrolet Silverado, registered to Tyler Curtis and Reiss Biby;

Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)(1) and 1028(g), and Title 28, United States Code, Section 2461(c), the defendant(s) shall forfeit substitute property, up to the value of the property described above if, by any act or omission of the defendant(s), the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(c) and 982(a)(1), and Title 28, United States Code, Section 2461.

CLINTON J. JOHNSON
United States Attorney

A TRUE BILL

REAGAN V. REININGER
Assistant United States Attorney

/s/ Grand Juror Foreperson
Grand Jury Foreperson

DANBEE C. KIM
Trial Attorney
Organized Crime and Gang Section
U.S. Department of Justice

39